# UNITED STATES DISTRICT COURT
# SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| ANDRE BARONE de FREITAS PINTO,<br><br>　　　　　　　　Plaintiff,<br>vs.<br><br>LUCIANA SCIUMBATA BARONE,<br><br>　　　　　　　　Defendant. | CASE NO. 17cv1209-LAB (KSC)<br><br>**ORDER GRANTING HAGUE CONVENTION PETITION** |

When a parent wrongfully retains foreign children in the United States, the Hague Convention requires the Court to order the children returned to their country of habitual residence so that the home country can determine custody. Brazilian citizens Luciana and Andre Barone entered a divorce agreement that provided for joint custody and allowed Luciana to travel to Boston with their two children, ages 5 and 11, for a temporary four month visit. The agreement specified that after four months, Andre would travel to Boston, which he did, and return to Brazil with the children. Instead, Luciana prohibited Andre from taking the children and fled to San Diego along with her children. Since Luciana wrongfully retained the children in the United States and no grave risk of harm is presented to the children by returning them to Brazil, the Court grants Andre's petition.

## Background

After Andre learned that Luciana was in San Diego with the children, he flew here with his brother and sister, retained counsel, and applied to this Court for a temporary restraining

order prohibiting Luciana from fleeing the district. The Court issued a TRO on June 16, 2017, and ordered the U.S. Marshals to take the couple's two children in coordination with Child Protective Services, where the children have been housed pending the hearing on preliminary injunction and trial on June 20, 2017. After granting a three-day continuance, the Court held the hearing on June 23, 2017. Luciana, a Brazilian attorney, represented herself with the assistance of a certified Portuguese interpreter. The Court received documents and testimony, including testimony from both Andre and Luciana, and heard argument from the parties.

## Analysis

The Hague Convention on the Civil Aspects of International Child Abduction is designed to "protect children internationally from the harmful effects of their wrongful removal or retention and to establish procedures to ensure their prompt return to the State of their habitual residence." *Convention*, 19 I.L.M. 1501 (1980). The United States implemented the Convention by enacting the International Child Abduction Remedies Act. 22 U.S.C. § 9001. The Act empowers courts to order the return of wrongfully retained children. *Id.* § 9004.

### A.   Jurisdiction

Luciana did not specifically challenge the Court's jurisdiction at the hearing, but she discussed a pending hearing on a temporary restraining order against Andre issued by the San Diego County Superior Court, Family Court Division. The Hague Convention, however, "preempts a state family court's jurisdiction to decide the merits of a custody dispute relating to the child until a determination is made as to whether the child must be returned pursuant to the Convention." Jurisdiction and Litigation Choices, Cal. Prac. Guide Family L. Ch. 7 A; *see Holder v. Holder*, 305 F.3d 854, 865 (9th Cir. 2002). And federal courts may order the return of children under the Hague Convention even when one parent has obtained a state court domestic violence injunction against the other parent. *See Mendez Lynch v. Mendez Lynch*, 220 F. Supp. 2d 1347, 1366 (M.D. Fla. 2002) (granting Hague petition and ordering father to take two children back to Argentina despite mother obtaining a domestic violence injunction against father in Florida state court). Therefore, this Court has jurisdiction to

decide the Hague petition despite Luciana's *ex parte* proceedings in state court.

### B. Wrongful Retention

Under the Convention, Andre has the burden to show by a preponderance of the evidence that Luciana wrongfully retained the children in the United States. *Holder v. Holder*, 392 F.3d 1009, 1015-16 (9th Cir. 2004). That means Andre needs to prove that Luciana breached his "rights of custody" established in the State where his children were "habitually resident immediately before the removal or retention" and that he would have "exercised" his rights "but for the removal or retention." *Convention* at 1501; *Holder*, 392 F.3d at 1014. The Court finds Andre has made that showing.

Andre submitted a certified translation of the couple's August 30, 2016 divorce agreement. The agreement provides for joint custody of the children and states, "Andre authorizes the stay of his children with their mother in the city of Boston/USA, from 08/31/2016 to 01/13/2017. The authorization is given on an exceptional basis and does not change the children's domicile, which is still Brazilian." The agreement also provides that the stay in Boston is "non-extendable," that the children "shall be delivered" to Andre on January 13, 2017, and that Andre "shall return with them to Brazil" where "they shall be delivered to the mother, for the beginning of the school year in Sao Paulo." Instead of turning the children over to Andre on January 13, 2017, Luciana fled to San Diego with the children. Applying the Hague Convention to these facts, the conclusion is straightforward: Luciana breached Andre's rights of custody as provided in the Brazilian divorce agreement.

At the hearing, Luciana suggested that the United States was the children's habitual residence since they have been present here since September 2016 and two state courts (Massachusetts and California) issued TROs. However, it is undisputed that "immediately before" Luciana retained the children in Boston, and then in San Diego, the children were habitually resident in Brazil. The terms of the divorce agreement make clear that "the settled intention of the parents" was for the children to return to school in Sao Paulo and retain their Brazilian domicile. *Mozes v. Mozes*, 239 F.3d 1067, 1078 (9th Cir. 2001) (reversing denial of Hague petition because district court improperly found United States was children's new

habitual residence). Moreover, the argument that the children have acclimated to the United States lacks merit. Luciana is temporarily permitted to be in the United States on a student visa, does not have a job, and does not have a place for the children to stay. She is dependent on financial support from Andre pursuant to the Brazilian divorce agreement. During the course of several months, Luciana moved the children from Brazil, to Boston, and then to San Diego, where the children were staying in a hotel until funds were exhausted. At the time the TRO issued, Luciana had vacated the hotel and her plans for food and shelter were uncertain. The Court "can say with confidence" that the children's attachments to the United States have not "changed to the point where requiring return to the original forum would now be tantamount to taking the child out of the family and social environment in which its life has developed." *Id.* at 1081.

### C. Grave Risk of Harm Exception

Children must be "promptly returned unless one of the narrow exceptions set forth in the Convention applies." 22 U.S.C. § 9001. Here, the only colorable exception is whether a "grave risk" of harm exists if the Court orders the children returned to Brazil. *Convention* at 1502. Luciana obtained a domestic violence restraining order from a state court in Boston and another one in San Diego. In the restraining order request, Luciana alleges that Andre called her on January 29, 2017, and threatened to kill her and the kids.

To overcome the Convention's imperative that courts return wrongfully retained children under the grave risk exception, "[t]he potential harm to the child must be severe, and the level of risk and danger required to trigger this exception has consistently been held to be very high." *Souratgar v. Lee*, 720 F.3d 96, 103 (2d Cir. 2013) (alterations omitted). Some courts, however, have found that a threat to kill the children or a history of domestic violence qualifies as a grave risk. *See Van De Sande v. Van De Sande*, 431 F.3d 567, 570 (7th Cir. 2005); *Ermini v. Vittori*, 758 F.3d 153, 164 (2d Cir. 2014).

To determine if a grave risk of harm exists, the Court heard testimony from Andre and Luciana, which was subject to cross examination and the Court's own questioning. Luciana testified that in twenty years of marriage, Andre never behaved violently except for a fight

the day they divorced—she says Andre hit her. More importantly, Luciana claimed that after she obtained a TRO in Boston, Andre threatened to kill her and the kids. Andre categorically denied both allegations. He also offered a third-party declaration from Carmen Gomide, Luciana's good Samaritan host for a few weeks in San Diego, who opined Luciana was unstable and said she feared Luciana would kill the kids.

After evaluating the testimony of the parties, the Court concludes Luciana has failed to show by clear and convincing evidence a "probability" that Andre will harm the children. *Souratgar*, 720 F.3d at 103 (affirming Hague petition grant because grave risk exception did not apply in the absence of credible evidence of harm against child). The testimony revealed that both parents deeply love their children and are highly protective of them. Indeed, the testimony was emotional and portrayed a bitter *custody* dispute, wherein both parties desperately want custody and leveled ugly allegations against each other in pursuit of that goal. Unfortunately, those types of allegations are all too common in custody disputes and the parties here succumbed to that temptation. But there is no credible evidence that Andre presents a grave risk of harm to the children.

Notably, after Andre is alleged to have threatened Luciana in Brazil, Luciana agreed to shared custody of the children. No reports of violence were ever filed. And the Brazilian divorce agreement was thereafter entered, in which joint custody was awarded. In addition, when Luciana refused to comply with the divorce agreement and called the police in Boston, Andre did not react with violence. He returned to Brazil and pursued lawful options through the courts; he filed suit in Brazil to enforce the divorce agreement, contacted the Central Authority (State Department), and retained legal counsel in the United States and filed this petition. Andre's past actions confirm that he will comply with this Court's order to safely return the children to Brazil and abide by any custody decision in the Brazilian courts, where that determination is properly made.

To be clear, this Court is not making a custody determination, nor does it have jurisdiction to do so. Rather, the Court is fulfilling a purely procedural task imposed by the Convention and Act, and returning the children to their "country of habitual residence so that

the courts of that country can determine custody." *Cuellar v. Joyce*, 596 F.3d 505, 508 (9th Cir. 2010). Whether Luciana's wrongful retention of the children affects her custody rights under the couple's divorce agreement is a matter solely for determination by the Brazilian courts. 22 U.S.C. § 9001 ("The Convention and this chapter empower courts in the United States to determine only rights under the Convention and not the merits of any underlying child custody claims.").

"The Hague Convention does not allow abducting parents to resort to courts [in another] country ... to thwart return of the child to its habitual residence[,]" and district courts are cautioned "not to allow abducting parents to manipulate judicial process" to delay the return of children to their home country. *Cuellar*, 596 F.3d at 511-12. Andre's petition for return of the children to Brazil is therefore granted.

## Conclusion and Order

Child Protective Services will transfer custody of Luiz Felipe Sciumbata Barone and Pedro Sciumbata Barone to Andre Barone, no later than 5:00 p.m. on Monday, June 26, 2017. Andre's counsel shall coordinate with the Court's Courtroom Deputy, Jamie Klosterman, to obtain Pedro and Luiz Felipe's passports. Within seven days of receiving custody, Andre shall return to Brazil with Pedro and Luiz Felipe so the important matter of child custody can be determined by the Brazilian courts. Andre shall pay all reasonable travel expenses for the children and Luciana to return to Brazil. Luciana may return to Brazil at a time convenient to her and in accordance with the schedule of the Brazilian court to address the custody issues. Andre's counsel may file this order with the Superior Court of San Diego, Family Court Division, to inform that court of these proceedings.

**IT IS SO ORDERED**.

DATED: 6-26-17

HONORABLE LARRY ALAN BURNS
United States District Judge